# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| 7-ELEVEN INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-0140-B |
| | § | |
| PUERTO RICO-7 INC., THE MATTERA | § | |
| RESERVE, INC., and JOHN MATTERA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff 7-Eleven, Inc.'s Motion for Summary Judgment (doc. 57). Upon consideration of the briefing, evidence, and applicable law, the Court the Court **GRANTS** the motion (doc. 57).

## I.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

This trademark infringement, unfair competition, and breach of contract dispute arises from Defendant Puerto Rico-7's ("PRSI") continued use of the service marks and franchise system previously licensed by Plaintiff 7-Eleven, Inc. ("SEI") following termination the Area License Agreement ("ALA") that allowed their use. SEI brings this suit against the former licensee, PRSI, and its owners, The Mattera Reserve, Inc. ("TMRI") and John Mattera.

---

[1] The Court takes its factual background from the properly supported statements of fact contained in Plaintiff's Brief in Support of its Motion for Summary Judgment (doc. 58) together with those facts Defendants admitted in its Answer (doc. 14). Defendants did not respond to Plaintiff's Motion for Summary Judgment, and the Court may consider those facts which Plaintiff properly supported with evidence to be undisputed. *Bookman v. Shubzda, et al.*, 945 F.Supp.999, 1002 (N.D. Tex. 1996).

Plaintiff SEI operates extended hours convenience stores under federally registered "7-ELEVEN" service marks ("7-ELEVEN Marks").   (*See* Pl.'s App., p. 24-26 (identifying federal registrations for the 7-ELEVEN service mark)).   Through its franchisees and area licensees, SEI operates more than 33,000 7-ELEVEN stores worldwide, including more than 7,400 in North America.  (Pl.'s App., p. 26).  These stores display the 7-ELEVEN Marks "in association with SEI's distinctive trade dress and in accordance with SEI's standards, specifications, and methods." (the "7-ELEVEN System").   (doc. 58, p. 4).  In support of the 7-ELEVEN System, SEI provides its licensees and franchisees with manuals, forms, and other trade secret materials.  (*Id.*).

A.      *The Agreements Between the Parties*

On April 23, 1987, SEI and PRSI executed the Area License Agreement, by which "PRSI was granted the right and undertook the obligation, to develop 7-ELEVEN stores in Puerto Rico in accordance with a development schedule set forth in" the agreement.  (*Id.*).  SEI granted PRSI an exclusive and limited license to use the 7-ELEVEN system and the 7-ELEVEN Marks in connection with the operation of stores in Puerto Rico, and the development schedule initially required PRSI to open 75 7-ELEVEN stores there over a nine-year period.  (*Id.*).  Three subsequent amendments to the ASA, among other changes, reduced the number of 7-ELEVEN stores that PRSI was required to develop.[2]  (*Id.*, p. 4-5).

Section II of the ALA required PRSI to pay a monthly License Royalty on gross sales of each

_____

[2]  The first Amendment to Area License Agreement, dated January 30, 1999, required PRSI to have developed 50 7-Eleven stores by 2007, with annual development quotas.  (Pl.'s App., 72-73).  The Second Amendment to Area License Agreement, dated October 20, 2005, required PRSI to have developed 22 7-Eleven stores by 2009, with annual development quotas.  (*Id.* at 88-91).  The Third Amendment to Area Licensing Agreement, dated September 8, 2006, required PRSI to have developed 15 7-ELEVEN stores by December 31, 2006; 18 by December 31, 207; and 21 by December 31, 2008.  (*Id.* at 101-02).

7-ELEVEN store operated by PRSI under the ALA.[3]  The ALA further required PRSI to maintain "sufficient working capital for [it] to fulfill faithfully its obligations under this Agreement."  (*Id.*, p. 6; Pl's App., p. 26).  Section VII of the ALA (as amended by paragraph 13 of the Second Amendment to Licensing Area Agreement) provided for automatic termination of the ALA in the event that PRSI materially defaulted, and remained in default for thirty days following notice of default.  That provision specifically provided that failure to make any royalty payments would constitute material default.  (doc. 58, p. 6; Pl's App., p. 96.*)*

On September 8, 2006, Defendant TMRI acquired 100% of the shares of PRSI through the execution of a Transfer Agreement and Consent.  (doc. 58, p. 6; Pl.'s App., p. 17, ).  As part of the stock purchase transaction, TMRI also executed a guaranty of PRSI's obligations under the ALA. (doc. 58, p. 6-7.; Pl.'s App. p. 105).  In connection with the purchase, and on the same day, the parties executed the Third Amendment to Area License Agreement, which reduced the number of stores required to be developed pursuant to the development schedule[4] and modified some royalty obligations.[5]  (doc. 58, p. 6; Pl.'s App., p. 101.).

With the stock purchase, TMRI executed a Promissory Note (the "Note") in favor of SEI in the principal amount of $709,000.  (doc. 58, p. 7; Pl.'s App., p. 16, 107-110).  The terms of the Note required TMRI "to repay the full amount of the principal and all interest accrued on or before

---

[3]  The ALA required PRSI to pay a 1.25% of gross sales from each store as a License Royalty. (doc. 58, p. 6; Pl's App., p. 28).

[4]  *See* note 2, *supra* (describing the obligations of the development schedule).

[5]  Under the Third Amendment to Area License Agreement, "PRSI was granted a reduction in the License Royalty from 1.25% of Gross Sales to 0.5% of Gross Sales through February 28, 2008 for existing stores, and provided for a six month period of royalty-free operation after the opening of any new 7-Eleven stores."  (doc. 58, p 6; Pl's App., p. 28).

September 7, 2008."[6]  (*Id.*).   Section 7 of the Note provided SEI the option to declare all unpaid

principal and accrued unpaid interest under the Note to be immediately due in the event that PRSI

defaulted under the terms of the ALA, or upon the termination of the ALA.  (*Id.*).

> B.     *Default and Termination of the Area License Agreement*

SEI alleged – and PRSI admitted – that in 2007, after SEI provided royalty relief in the Third

Amendment to the ALA, "PRSI failed to make its License Royalty payments for seven consecutive

months,[7] despite SEI's repeated requests for payment." (doc. 1, ¶ 23; doc. 14, ¶ 18).  PRSI also failed

to develop new stores as required by the ALA's development agreement.  (doc. 58, p. 8).  SEI grew

concerned with PRSI's capitalization and offered evidence that "from time to time during 2007: (1)

[PRSI's] 7-Eleven stores often had empty shelves; (2) its vendors had gone unpaid and had refused

to deliver products to PRSI's stores; (3) it failed to pay utility bills on some of its stores which it was

forced to close, and (4) it ceased its efforts to develop additional 7-ELEVEN stores as required under

the development schedule."  (doc. 58, p. 7; Pl's App., p. 29).

By letter of October 11, 2007, SEI sent PRSI a Notice of Default ("Default Notice") to

Mattera[8] outlining the deficiencies in PRSI's performance under the ALA.  The Default Notice

stated that PRSI was in "material default" of the following ALA provisions: Section II's obligations

---

[6]  "Interest was to accrue at a rate of seven percent per annum, calculated daily beginning on September 7, 2007.  Any past-due amount owed under the Note would accrue interest at a rate of eighteen percent."  (doc. 58, p. 7; Pl.'s App., p. 107).

[7]  SEI's notice letter of October 11, 2007 indicates that "PR7 has failed to pay the agreed-upon License Royalties due for sales made in March, April, May, June, July, August, and September 2007." (Pl.'s App., p. 11).

[8]  Defendants admit that "[t]he default notice was sent in the manner required by Section XI of the Area License Agreement to the notice address set forth therin, as well as to Mattera's home address." (doc. 14, ¶ 7).

to pay License Royalties; Section V.A(6)'s obligation to maintain sufficient working capital; and Section V(C)'s obligation to develop new stores.  (doc. 58, p. 7; Pl.'s App., p. 111-112).  The Default Notice, citing Section VII(A)(1) of the ALA, stated that PRSI would "have thirty (30) days after notice from SEI within which to cure those defaults in order to avoid automatic termination of the Agreement."  (Pl.'s App., p. 111-112).  "At Mattera's request, SEI three times agreed to extend the 30-day cure period afforded PRSI," with the final deadline set for December 12, 2007.  (doc. 58, p. 8).  PSRI paid the past due royalties, but did not cure the remaining defaults outlined in the Default Notice.  As a result, on December 20, 2007, sent a letter ("Termination Letter") to Mattera confirming that the ALA terminated upon the expiration of the cure deadline of December 12, 2007.  (doc. 58, p. 9; Pl.'s App., p. 114-116).

The Termination Letter demanded that PRSI immediately comply with the post-termination provisions contained in Section VIII of the ALA.  (*Id.*).  Section VIII (A) of the ALA requires, upon termination, Licensee (PRSI) to "permanently discontinue the use of the Trademarks or any colorable variation thereof, the Trade Secrets and the 7-Eleven System, as any identification connected with the 7-Eleven System."  (Pl.'s App. p. 52).  Section VIII (B) provides that upon termination of the ALA, PRSI is further required to immediately return or destroy "all Trade Secrets, including printed manuals and forms and other materials provided" by SEI.  (*Id.*).

Following termination of the ASA, "some of PRSI's formerly licensed 7-ELEVEN stores continued to operate under the 7-ELEVEN Marks and 7-ELEVEN System."  (doc. 58, p. 9).  At those stores, "signs, logos, paper products such as napkins and cups, and advertising materials bearing the 7-ELEVEN Marks have been used and displayed prominently."  (Pl.'s App., pp. 123-24; 125-28). On January 9, 2008, SEI sent Mattera a letter reiterating the post-termination obligations of the

ALA and demanding that PRSI discontinue its use of SEI's trademarks and trade secrets, remove signage and other identifying information from its stores, and return manuals and forms to SEI. (Pl.'s App., p. 117-18). The letter noted that "[b]ased on the recent inspection of a sample of the "7-Eleven" stores in Puerto Rico, I understand that none of those stores are currently closed, nor have they been de-identified." (*Id.*).

By letter of January 17, 2008, SEI provided notice that, pursuant to Section 7 of the Note, it was exercising its right to declare all unpaid principal and accrued interest to be immediately due. (doc. 58, p. 10; Pl.'s App., p 121-22). PRSI has not made any payments on the Note. (doc. 58, p. 10). On January 29, 2008, SEI filed its Complaint, seeking declaratory judgment that the ALA was validly terminated and bringing claims for service mark infringement, trademark counterfeiting, federal and common law unfair competition, breach of contract and action on a promissory note.

Defendants answered and brought counterclaims alleging fraud in the sale of stock in connection with the Transfer Agreement and Consent. (doc. 14). SEI filed a motion to dismiss the counterclaim, alleging the counterclaim did not meet Rule 9(b)'s heightened pleading requirements for fraud claims. In response, Defendants sought and received leave to amend their counterclaims to correct the challenged deficiencies. (doc. 33). SEI moved to dismiss the Amended Complaint (doc. 36), and on November 19, 2008, the Court granted the motion, dismissing Defendants' counterclaims with prejudice. (doc. 50).

On January 8, 2009, the Court granted, following a hearing, Defendants' Counsel's Unopposed Motion for Leave to Withdraw and ordered Defendants to provide notice of their new counsel by March 9, 2009. (doc. 54). Despite the Court's order to show cause, Defendants did not

provide notice of new counsel, and currently unrepresented.[9]   (doc. 56).   On July 13, 2009, SEI

moved for summary judgment on the grounds that there are "no material facts in dispute regarding

the substance" of its claims.   (doc. 58, p. 1).   SEI also included evidence that PRSI continued to

operate stores using the 7-ELEVEN Marks after the termination of the ALA and that, though those

stores are now closed, many still display the 7-ELEVEN Marks.   (doc. 58, p. 10).   Defendants did not

respond[10] to SEI's Motion for Summary Judgment and the Court continued the remaining pretrial

deadlines pending ruling on the motion.

## II.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and record evidence show that no

genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter

of law.   FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069 1075 (5th Cir. 1994).   Only

disputes about material facts preclude a grant of summary judgment, and "the substantive law will

identify which facts are material."   *Anderson v. Liberty Lobby*, 477 U.S. 242,248 (1986).

---

[9] The Court again ordered Defendants to show cause "why they have not complied with this
Court's order of January 8, 2009 Order, in writing, by July 1, 2009" and warned that failure to respond may
result in sanctions.   (doc. 56).   Despite a hearing and fair warning, Defendants did not designate counsel
as ordered.   Defendant corporations may only appear in federal court through counsel, and are not entitled
to proceed *pro se*.   *Southwest Express Co. v. Interstate Commerce Comm'n*, 670 F.3d 53, 56 (5th Cir. 1982).
Defendants failure to obtain counsel in accordance with this Court's orders (docs. 54, 56, 61) does not
preclude consideration of SEI's timely motion for summary judgment.   In fact, "where a corporation
repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55."
*Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 192 (2d Cir. 2006).   For reasons discussed in Section II of
this Memorandum Opinion and Order, the Court will not enter judgment by default, and will instead
examine the summary judgment evidence in the light most favorable to light most favorable to the non-
movant Defendants under the applicable standard for summary judgment.

[10] Defendants' response was due on or before August 5, 2009.

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). To meet this burden, the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Hawkins Pro-Cuts, inc. v. DJT Hair, Inc.*, No. 3-96-CV-1728-R, 1997 WL 446458 at *3 (N.D. Tex. July 25, 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986)). Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp.*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,'" . . . by 'conclusory allegations,'" . . .by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). The non-moving party must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). The Court will not make credibility determinations, weigh the evidence, or draw inferences but instead confine its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255.

In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant Defendants. *Id.* at 301. The Court will "resolve factual controversies in favor of the non-moving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the non-moving party could or would prove the necessary

facts." *Little*, 37 F.3d at 1075.

Defendants have not responded at all to SEI's motion for summary judgment. While Defendants' failure to respond does not entitle SEI to a "default" summary judgment, the Court may "accept [D]efendants' evidence as undisputed." *Bookman v. Shubzda, et al.*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Tutton v. Garland Indep. Sch. Dist.*, 733 F.Supp. 1113, 1117 (N.D. Tex. 1990)); *see also Eversley v. MBank Dallas*, 843 F.2d 172, 174 (summary judgment was proper where party's unanswered motion made a *prima facie* showing of entitlement to judgment.).

## III.

## ANALYSIS

SEI presented summary judgment evidence that it owns the registered 7-ELEVEN Marks and that those registrations are valid and subsisting. (doc. 58, p. 2-4). "Any registration . . . shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . ." *Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*, No. 3: 01-CV-0306-D, 2001 WL 540213 at * 2 (N.D. Tex. May 17, 2001) (quoting 15 U.S.C. § 1115(a)). It is undisputed that PRSI's right to display the 7-ELEVEN Marks arise solely from the ALA. (doc. 14, ¶¶ 6, 7). To prevail on a claim for service mark[11] infringement, "the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent, and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Hawkins*

---

[11] Service mark infringement and trademark infringement "are governed by identical standards." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1156 (9th Cir. 2001). The "only difference between a trademark and a service mark is that a trademark identifies goods while a service mark identifies services." *Id.* This Court will cite authority involving both types of protected mark.

*Pro-Cuts, Inc. v. DJT Hair, Inc.*., No 3-96-CV-1728-R, 1997 WL 446458 at *5 (N.D. Tex. July 25, 1997) (citing 15 U.S.C. § 1114(1)(a)).  Whether Defendants' alleged use of the 7-ELEVEN Marks constitutes infringement or unfair competition[12] turns on whether SEI validly terminated the ALA that had previously authorized PRSI to use those marks.  Accordingly, the Court will first consider SEI's contract-based claims before addressing whether the evidence supports the a conclusion as a matter of law that PRSI's actions create the "substantial likelihood of confusion" as required to support a judgment on SEI's trademark infringement and unfair competition claims.  *Joy Mfrg. Co. v. CGM Valve & Gauge Co., Inc.*, 730 F.Supp. 1387, 1394 (S.D. Tex. 1989).

A.      *Declaratory Judgment Regarding the Termination of the Area License Agreement*

SEI seeks a "declaratory judgment that the Area License Agreement was validly terminated by SEI in accordance with its terms."  (doc. 1, ¶ 38 "Count 1").  Because PRSI's right to use the 7-ELEVEN Marks is derived from the ALA, SEI argues that any use following the valid termination of the ALA is unauthorized.

The Declaratory Judgment Act authorizes federal courts to resolve an "actual controversy within its jurisdiction" by declaring "the rights and other legal relations of any interested party seeking such a declaration. . ." 28 U.S.C. § 2201(a).  An "actual controversy" exists where the facts "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant he issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  Defendants do not contest this Court's

---

[12]  SEI's federal unfair competition claim (Count IV) and Texas unfair competition claim (Count V) are governed by the same standard that applies to trademark infringement claims, and may be shown by the same evidence.  *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703 (5th Cir. 1981); *Hawkins Pro-Cuts*, 1997 WL 446458 at *6.  *See infra* note 13 and accompanying text.

jurisdiction, and the Court concludes that the undisputed evidence that PRSI continues to display of the 7-ELEVEN Marks provides sufficient justification for invoking the remedies of the Declaratory Judgment Act.

SEI contends that it terminated the ALA pursuant to its terms, which entitled "SEI to terminate this Agreement" if PRSI "materially defaults in the performance of any term, covenant or condition provided in this Agreement, specifically including, but not limited to, [PRSI's] failure to make any payment without offset when due and as due of the License Royalty." (ASA, § 13; Pl.'s App., p. 96). That section further provided that if the "breach or default continues for a period of thirty (30) days following notice thereof to [PRSI] by SEI, this Agreement shall terminate without further notice or action by SEI." (*Id.*).

SEI presented evidence that PRSI failed to pay License Royalties for seven months; that PRSI maintained inadequate capitalization, which caused vendors to stop delivering products to some stores; and that PRSI failed to open and maintain the number of stores required under the development schedule, as the number of stores in the territory actually declined. SEI described these deficiencies in its October 11, 2007 Default Notice, which also informed PRSI that, under the ALA, it was "entitled to cure the defaults noted above within the next thirty (30) days." (Pl.'s App., p. 112). The Default Notice stated that "[i]f PRSI does not completely cure all of the defaults noted above, then subject to applicable law, the Agreement shall terminate at the end of the thirty (30) day period without further notice or opportunity to cure," and informed PRSI that upon termination, the post-termination provisions in Sections VIII and XIII would be triggered. (*Id.* at p. 113).

Defendants "admit 'SEI terminated PRSI's license in accordance with its terms after PRSI failed to cure its substantial and material defaults within the cure period set forth therein, despite

-11-

being granted several extensions of the cure period.' to the extend that the license was terminated in accordance with its terms, defaults were not cured within the cure period, and extensions of the cure period were granted." (doc. 14, ¶ 6(d)). Defendants, however, "deny that the defaults were 'substantial' or 'material.'" (*Id.*). SEI argues that, though the License Royalty payments were cured, Defendants remained in material default of their capitalization and development obligations. (doc. 58, p. 8).

The undisputed summary judgment evidence, viewed in the light most favorable to Defendants, together with Defendants' admissions, establishes that Defendants defaulted on their obligations under the ALA, that Defendants defaults were material, and that Defendants failed to cure the default within thirty days. PRSI admitted that though the number of stores it was required to open pursuant to the development agreement was lowered with the Third Amendment, it did not open the agreed upon number of stores. (doc. 14, ¶ 16). Failure to meet the obligations of the development agreement constitutes a material breach of the ALA. *See Bennigan's Franchising Co., L.P. v. Swigonski*, No. 3: 06-CV-2300-BH, 2008 WL 648936 at *4 (N.D. Tex. Feb. 26, 2008) (finding that failure to open a franchise location in accordance with the development schedule constituted material breach under Texas law). Additionally, SEI presented evidence that when it eventually terminated the ALA on December 12, 2007, Defendants "still were operating stores with insufficient capital, as evidenced by the empty shelves resulting from vendors refusing to deliver products to those stores." (Pl.'s App., p. 30). Defendants have not provided any contradictory evidence, and the Court concludes that there are no material facts in dispute regarding Defendants' material default under the ALA or the sufficiency of the notice SEI provided. Accordingly, the Court GRANTS SEI's motion for summary judgment on Count I and declares that the ALA was validly

terminated on December 12, 2007.

      B.     *Breach of Contract Claim Regarding Post-Termination Obligations*

As described in the Default Notice, the valid termination of the ALA triggered the post-termination obligations contained in Section VIII of the ALA.  Section VIII(A) provides that "[u]pon the termination of this Agreement for any reason, Licensee will . . . permanently discontinue the use of the Trademarks or any colorable variation thereof, the Trade Secrets and the 7-Eleven System, as well as any identification connected with the 7-Eleven System." (Pl.'s App., p. 52). Section VIII(B) requires PRSI to return to SEI or destroy all manuals, forms or other Trade Secrets upon termination.  (*Id.*).  PRSI, by the terms of those provisions, is "responsible for all reasonable costs incurred in complying" with its post-termination obligations.  (*Id.*).  Through execution of the guaranty, Defendant TMRI is liable for the licensee's post-termination obligations under the ALA. (Pl.'s App., pp. 105-06).

SEI moves for summary judgment on its claim that Defendants breached the post-termination provisions of the ALA and seeks specific performance of the post-termination obligations.  (doc. 58, p. 24-27; Count VI; doc. 1, p. 12).  To prevail on a breach of contract claim under Texas law, SEI must show "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003) (citing *Renteria v. Trevino*, 79 S.W.3d 240, 242 (Tex. App.– Houston [14th Dist.] 2002, no pet.)).  SEI has presented summary judgment evidence to support each element of its claim. Specifically, SEI included in its motion undisputed evidence: that following termination of the ALA, Defendants continued to operate stores using the 7-ELEVEN Marks; that Defendants have not de-

-13-

identified its formerly licenses stores even after their closing and; that Defendants have not returned any manuals, forms, or other materials provided by SEI. (Pl.'s App., pp. 31-33, 123-24 125-28).  No fact issues preclude a finding that Defendants are in breach.  Accordingly, the Court GRANTS SEI's motion for summary judgment on its breach of contract claim (Count VI).

SEI further seeks specific performance of Defendant's post-termination obligations.  The equitable remedy of specific performance is available "as a substitute for monetary damages when such damages would not be adequate."  *Stafford v. Southern Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App. – Dallas, 2007, pet. denied).  Plaintiff's breach of contract claim is rooted in Defendants' continued display of the 7-ELEVEN Marks despite the contractual obligation to immediately cease use of those marks upon termination of the ALA.  As discussed more fully below, where unauthorized use of registered marks creates a likelihood of confusion, "immediate and irreparable harm" is shown.  *Joy Mfg. Co.*, 830 F.Supp. At 1394.  Because the harm from the continued display of the 7-ELEVEN Marks is irreparable and will continue until the stores are de-identified, monetary damages are not adequate.  Thus, the record evidence, as a matter of law, entitles SEI to the equitable remedy of specific performance and the Court ORDERS Defendants to immediately make any and all changes and alterations to their formerly licensed premises required to de-identify their stores and to return to SEI all manuals and other confidential materials relating to the operation of 7-ELEVEN stores.

C.    *Breach of Promissory Note*

Termination of the ALA also entitled SEI to declare all unpaid principal and interest due under the Note immediately due and payable.  (Pl.'s App., p. 107-110; Note, Section 7).  SEI's letter of January 17, 2008 notified PRSI that it had accelerated the Note.  (Pl.'s App., p. 121-22).

-14-

A promissory note is a contract evincing an obligation to pay money.  *DeClaire v. G&B Mcintosh Family Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App.–Houston [1st Dist.] 2008, no pet.). Under Texas law, "to recover for a debt due and owing under a promissory note, a holder must establish that it is the legal holder of an existing note, the debtor's execution of the note, and that an outstanding balance is due and owing."  *Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 72 (Tex. App.– Houston [1st Dist.] 2008, no pet.).

The terms of the Note unambiguously grant SEI the option to "declare all principal and accrued, unpaid interest under this Note to be immediately due and payable" upon termination of the ALA.  (Pl.'s App., p. 108).  Defendants admit that it received SEI's letter of January 17, 2008 accelerating the Note and further "admit the current balance on the note is $728,444.08." (doc. 14, ¶ 20).  It is undisputed that Defendants have made no payments on the Note.  SEI presented competent and undisputed evidence that, applying the contractual post-default interest rate of 18% rate [13] to the past-due amount brought the balance to $1,131,435.36 as of June 30, 2009.  (Pl.'s App., pp. 119-120).  As a result, the Court GRANTS SEI's motion for summary judgment on its claim to recover on the Note (Count VII).

### D.       *Service Mark Infringement and Unfair Competition*

SEI contends that Defendants' use of the 7-ELEVEN Marks after the valid termination of the ALA constitutes trademark infringement and unfair competition in violation of 15 U.S.C. § 1114(1)(a), 15 U.S.C § 1125, and Texas law.   (doc. 1, Counts II, IV, and V).   Trademark infringement occurs where a party uses "without the consent of the registrant" any registered mark

---

[13]  This rate is contained in paragraph 4 of the Note, and falls within the parameters allowed by Section 303.009 of the Texas Finance Code.

in a manner that "is likely to cause confusion, or to cause mistake, or to deceive." *Joy Mfg. Co.*, 730 F.Supp. at 1394 (citing 15 U.S.C. § 1114(1)(a)). SEI's claims for unfair competition under both the Lanham Act and Texas law are governed by the same analysis and turn on the same facts.[14]

In support of these claims, SEI has presented uncontroverted evidence that following the termination of the ALA, Defendants operated stores under the 7-ELEVEN Marks for a period of time, and that its now-closed stores continue to display the 7-ELEVEN Marks. (Pl.'s App., pp. 31-33, 123-24 125-28). Because the Court determined that the ALA was appropriately terminated, any continued use of the 7-ELEVEN Marks was unauthorized. PRSI "is an ex-licensee, and the law is clear that termination of a trademark license precludes further use by the licensee." *Ramada Franchise Sys. Co.*, 2001 WL 540213 at * 2. As a result, "a trademark infringement claim is established so long as the trademark was employed in a manner that was likely to cause confusion or to deceive." *Hawkins Pro-Cuts*, 1997 WL 446458 at *5.

"The main purpose of the cause of action for trademark infringement is to 'secure the owner of the trademark the goodwill of his business and to protect the ability of consumers to distinguish among competing products.'" *Texas Tech Univ. v. Spiegelberg*, 461 F.Supp.2d 510, 517-18 (N.D. Tex. 2006) (quoting *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002)). Accordingly, "falsely suggesting affiliation with the trademark owner in a manner likely to cause

---

[14] *See Interstate Battery Sys. v. Wright*, 811 F.Supp. 237, 244 (N.D. Tex. 1993) ("Ordinarily, the same set of facts enabling a plaintiff to recover under [15 U.S.C.] Section 1114 will enable recovery under [15 U.S.C.] Section 1125."). *See also Hawkins Pro-Cuts*, 1997 WL 446458 at *5 ("Similar to the claim for trademark infringement, an essential element to establish unfair competition under Texas law is a likelihood of confusion between the product of the plaintiff and that of the defendant."). As a result, a grant of summary judgment on SEI's infringement claim (Count II) will entitle SEI to summary judgment on its unfair competition claims (Counts IV, V). *Hawkins Pro-Cut*, 1997 WL 446458 at *6 ("Therefore, because this Court has found that DJT infringed upon HPCI's trademark, summary judgment on the unfair competition claim and common law trademark infringement is warranted.").

confusion as to source or sponsorship constitutes infringement." *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975). "Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks." *Hawkins Pro-Cuts*, 1997 WL 446458 at *5 (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983)). A patron of PRSI's formerly-licensed stores adorned by the 7-ELEVEN Marks "undoubtedly would believe that [SEI] endorses the operation of the shop." *Id.* "Because of this risk, the Fifth Circuit has held that the continued use of a trademark by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement." As a result, the Court concludes that PRSI's display of the 7-Eleven Marks following the termination of the ALA constituted service mark infringement as a matter of law, and GRANTS SEI's motion for summary judgment on its claims for service mark infringement and unfair competition (Counts II, IV, and V). Because SEI agreed to voluntarily dismiss its claim for trademark counterfeiting (Count III) in the event the Court granted summary judgment on its claim for service mark infringement (Count II), Count III is DISMISSED. (doc. 58, p 14).

SEI further seeks to permanently enjoin Defendants from any further acts of infringement. (doc. 1, pp. 11-12). To obtain a permanent injunction, SEI must show irreparable harm, that "the irreparable harm is greater than the hardship that the permanent injunction would cause the defendant," and "that the injunction will have no adverse effect on the public interest." *Hawkins Pro-Cuts*, 1997 WL 446458 at * 7-8.

The record contains no factual disputes that preclude a determination that, as a matter of law, Defendant's continued display of the 7-ELEVEN Marks causes irreparable harm to SEI. "When

-17-

a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm, regardless of the actual quality of the defendants goods.  The injury lies in the fact that the plaintiff no longer can control its own reputation and goodwill." *Joy Mfg., Co.*, 730 F.Supp. at 1394; *See also Hawkins Pro-Cuts*, 1997 WL 446458 at *7. When unauthorized use of service marks wrongly identify Defendants' formerly-licensed locations with SEI, the resulting injury impacts the entire SEI chain.  "A bad experience in what is supposed to be a relatively uniform chain may influence the customer to view the entire franchise poorly." *Ramada Franchise*, 2001 WL 540213 at *3.  The confusion arising from the unauthorized use of SEI's marks "will be difficult to pinpoint as compensable damages, and thus, the harm is irreparable." *Hawkins Pro-Cuts*, 1997 WL 446458 at *7.  SEI has alleged precisely the sort of harm to its reputation and ability to distinguish its services that has been recognized as irreparable.  (doc. 58, pp 19-21).

The balance of hardships also favors SEI.  To establish eligibility for a permanent injunction, SEI must show that its "irreparable harm is greater than the hardship that the permanent injunction would cause" the Defendants.  *Hawkins Pro-Cuts*, 1997 WL 446458 at * 7.  Although Defendants will suffer some amount of harm if an injunction is issued, "courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." *Ramada Franchise*, 2001 WL 540213 at *3. SEI presented evidence that PRSI's continued use of the 7-ELEVEN Marks creates a likelihood of confusion that threatens injury to SEI's business and reputation that cannot be adequately compensated in damages.  Defendants have not countered SEI's evidence nor have they articulated any hardship that could plausibly outweigh SEI's irreparable harm.  Further, Defendants have not presented evidence that a

-18-

permanent injunction would have an adverse effect on the public interest.  Because an injunction

would "ensure compliance with both state and federal laws, as well as the parties' own agreement,"

it would not have an adverse effect on the public interest.  *Hawkins Pro-Cuts*, 1997 WL 446458 at

*8.  *See also Ramada Franchise*, 2001 WL 540213 at *3 (finding that the public interest "promotes

the protection of valuable trademarks and service marks in a capital-based economy that rewards

success through competition.").  Accordingly, SEI has established entitlement to a permanent

injunction, and the Court GRANTS SEI's motion for summary judgment and enjoins Defendants

further unauthorized use of the 7-ELEVEN Marks.

     E.    *Attorneys' Fees*

    SEI seeks to recover attorneys fees on all of its remaining claims and moves for summary

judgment on its claim for attorneys' fees.  (doc. 58, pp. 28-35).  SEI contends that it is entitled to

attorneys' fees pursuant to the terms of the ALA and the guaranty, and under Texas and federal law.

(*Id.*).

    The ALA expressly provided that SEI may seek "any equitable remedy including, without

limitation, temporary and/or permanent injunctive relief and a decree for the specific performance

of the terms of this Agreement."  (Pl.'s App., p. 98; ALA Section XIV.H).  The ALA continued:

"Provided that SEI substantially prevails in obtaining such injunctive relief, Licensee agrees to pay

all court costs and reasonable attorneys' fees incurred by SEI in obtaining such relief."  (Pl.'s App.,

p. 99; ALA Section XIV.H(2)).  Pursuant to the Guaranty, TMRI "unconditionally and irrevocably

guarantee[s] to SEI and its successors and assigns that all of the obligations of the Area Licensee

under the Agreement have been, and will be punctually paid and performed."  (Pl.'s App., p. 105).

    "Texas courts will enforce a contractual agreement to pay attorneys' fees."  *Hawkins Pro-Cuts*,

1997 WL 446458 at *8 (citing *Beighley v. FDIC,* 868 F.2d 776, 785-86 (5th Cir. 1989)); *Meineke Discount Muffler v. Jaynes,* 999 F.2d 120, 126 (5th Cir. 1999). By the terms of the ALA, PRSI agreed to pay attorneys' fees incurred in obtaining the injunctive relief sought in SEI's Motion. The Court concludes that resolution of SEI's declaratory judgment claim (Count 1), service mark infringement (Count II), Federal Unfair Competition (Count IV), Texas Unfair Competition (Count V) necessary to awarding the injunctive relief SEI sought and obtained.[15] Attorneys fees for the award of the equitable remedy of specific performance for breach of post termination obligations (Count VI) is also supported by the ALA. Accordingly, the Court GRANTS SEI's motion for summary judgment on its claim for attorneys' fees on those claims.

SEI may recover attorneys' fees incurred in pursuit of its action on a promissory note (Count VII) under Texas law. Texas Civil Practice and Remedies Code Section 38.001 provides that a "person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001. "To obtain an award of attorney's fees under . . . Section 38.001 of the Civil Practice and Remedies Code, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995). SEI's claim for action on a promissory note (Count VII) is a claim for breach of contract, and SEI has satisfied the requirements set forth under Texas law. *DeClaire,* 260 S.W.3d at 44. Thus, the Court GRANTS SEI's motion for summary judgment on its claim for attorneys' fees

---

[15] SEI is additionally entitled to attorneys fees on its claims under the Lanham Act (Counts II and IV) because SEI has included uncontested facts sufficient to render this an "exceptional case." Award of attorneys fees is appropriate where the infringement "is intentional, deliberate, or willful." *Texas Tech Univ.* , 461 F.Supp.2d at 526-27. Where a licensee continues to use marks after learning that authorization has been terminated, the circumstances allow an award of attorneys fees. *Id.*

on Count VII.

SEI supports its motion for summary judgment on its claim for attorneys' fees with the affidavits of James C Rubinger and Kyle W. Johnson that also attach the billing records used to calculate its claimed fees. (Pl.'s App. p. 133; Pl.'s App. p. 175; doc. 63, p. 3; doc. 63, p. 50). SEI avers that it incurred legal fees in the amount of $88,929.05 pursuing this action. (doc. 62, pp. 1-2). SEI presented evidence that addressed the factors relevant to assessing the reasonableness and necessity of the attorneys' fees incurred.[16] Defendants have not challenged SEI's factual assertions and no fact issues preclude a ruling that this is a reasonable and necessary sum. Accordingly, the Court GRANTS SEI's motion for summary judgment on its claim for attorneys fees and ORDERS that Defendants pay SEI attorneys' fees totaling $88,929.05.

### IV. Conclusion

For the reasons stated above, the Court: (1) **GRANTS** SEI's motion for summary judgment on Counts I, II, IV, V, VI, and VII and (2) **DISMISSES** Count III with prejudice.

It is **FURTHER ORDERED, ADJUDGED, AND DECREED** that the Area License Agreement between the parties was validly terminated by SEI on December 12, 2007.

It is **FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants shall

---

[16] The factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case: (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson v. Georgia Highway Exp.*, 488 F.2d 714, 717-719 (5th Cir. 1974). Determination of the amount of attorneys fees under Texas law "are virtually identical to the *Johnson* factors used by the Fifth Circuit." *Campbell v. Hardradio*, No. 3:01-CV-2663-BF, 2003 U.S. Dist. LEXIS 23584 at *5 (N.D. Tex. Dec. 31, 2003).

specifically perform the post-termination obligations of the Area License Agreement and shall immediately make any and all changes and alterations to their formerly licensed premises required to de-identify their stores and to turn over to SEI all manuals and other confidential materials relating to the Defendants' operation of their stores as 7-ELEVEN stores.

It is **FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants are hereby permanently enjoined from any further use or display of the 7-ELEVEN Marks in any manner that is likely to give the public the impression that either Defendants or their previously-licensed stores are in any way associated with SEI.

It is **FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants shall pay SEI the amount of $88,929.05 for attorneys' fees incurred in this action.


SO ORDERED

SIGNED: December 9, 2009




JANE J. BOYLE
UNITED STATES DISTRICT JUDGE